UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DONNA RAE DORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:14-1202 |
| | ) | Judge Sharp |
| ROBERTSON COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court in this removed civil rights action is Defendant Robertson County Tennessee's Motion for Summary Judgment (Docket No.14). That Motion has been fully briefed by the parties. For the reasons that follow, the Court will grant the Motion as to Plaintiff Donna Rae Dorris's federal claims, but decline to exercise supplemental jurisdiction over her state law claims.

### I. Factual Background

In support of its Motion, and in accordance with this Court's Local Rules, Defendant filed a Concise Statement of Material Fact which, for the most part, Plaintiff does not dispute. Those facts show the following.

Plaintiff is an employee of the Robertson County School Board. At least as of the time of the filing of Defendant's Motion for Summary Judgment, she served as the Supervisor of Student Services, a position that she held since 2006.

In September 2012, Plaintiff was informed by a school administrator at East Robertson Elementary School about an incident involving the possible sexual abuse of one student by another. Plaintiff advised the school administrator to follow up and to investigate the matter to determine

1

what actually happened. After that internal investigation, the school administer informed Plaintiff that both the alleged perpetrator and the alleged victim claimed the allegations were unfounded. No governmental or law enforcement authorities were informed about the allegations of sexual abuse at that time.

In February 2013, the Robertson County Sheriff's Office received a report from a mother who claimed that her child, a student at the elementary school, may have been the victim of an incident of sexual abuse that occurred back in September 2012. In response to this report, the Sheriff's Office commenced an investigation. The investigation revealed that the school had conducted its own internal investigation into the matter and determined that nothing had occurred on which to base a referral of known or suspected child abuse to the relevant authorities.

On April 9, 2013, Plaintiff met with Detective Angela Looney of the Robertson County Sheriff's Office. At that time, Plaintiff provided Detective Looney with the notes she had made concerning the alleged incident. Plaintiff also discussed her knowledge of the alleged incident with Detective Looney.

On April 18, 2013, a Robertson County grand jury indicted Plaintiff and two other individuals for failing to report known or suspected child abuse in violation of Tennessee's reporting statute. More specifically, the Indictment alleged that defendants had reasonable cause to suspect that a child had been sexually abused by another child while at school, but did not report that knowledge or suspicion to appropriate authorities as required by Tenn. Code Ann. § 37-1-605.

Following the return by the grand jury, Plaintiff was contacted by the Sheriff's Office on April 23, 2014, and informed that she would be arrested and should turn herself in. In accordance with that directive, she reported to the Sheriff's Office at 3:45 p.m. After the booking process was

completed, she was released at approximately 7:15 p.m. The charges against Plaintiff were subsequently dismissed by the District Attorney and the record relating thereto was expunged.[1]

In response to Defendant's Motion for Summary Judgment, Plaintiff has filed her own Concise Statement of Material Facts. Therein, she claims that, during the interview on April 9, 2013, she told Detective Looney that she had no direct knowledge of any of the circumstances surrounding the allegation about the alleged sexual abuse at East Robertson Elementary School, and that the only knowledge she had was from two phone conversations with the Assistant Principal at the school. She also told Detective Looney that: in the first conversation, she advised the Assistant Principal to investigate the matter; and, in the second conversation, she was informed by the Assistant Principal that there was nothing to the allegation, other than that two children had been sticking their tongues out at each other.

Apart from the Assistant Principal, Plaintiff claims that she never discussed the matter with anyone who might have knowledge about the incident. That is, she never spoke with the children in the classroom, the alleged perpetrator or victim, the teacher, or the parents. She further claims that, except for the Assistant Principal, no witness advised the Sheriff's Office that Plaintiff had any knowledge of the incident beyond that which she was told by the Assistant Principal.

---

[1] Because the charges were expunged, the parties, with leave of the Court, have filed all of the papers relating to the Motion for Summary Judgment under seal. The Court, however, declines to place this decision under seal.

"The English common law, the American constitutional system, and the concept of the 'consent of the governed' stress the 'public' nature of legal principles and decisions." Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1177 (6th Cir. 1983). As a consequence, there is a "presumptive right of the public to inspect and copy judicial documents and files." In re Knoxville News-Sentinel Co., Inc., 723 F.2d 470, 474 (6th Cir. 1983). While a trial court has "the power to seal [its] records when interest of privacy outweigh the public's right to know," id., that does not seem appropriate here given that Plaintiff's Complaint is a matter of public record, and the majority of the underlying facts are aired in that Complaint. Moreover, although some of the allegations relate to the alleged sexual abuse of minors, none of the minors are identified in this opinion.

Plaintiff also contends that Detective Looney was the only investigator on the case, and the sole witness before the grand jury. She asserts that Detective Looney misrepresented the result of her investigation when testifying and presenting evidence before that body. More specifically, she claims that Detective Looney's testimony before the grand jury (1) indicated that Plaintiff had more knowledge about the circumstances of the underlying incident than the investigation actually revealed; and (2) omitted the fact that the only knowledge Plaintiff had about the incident came from the Assistant Principal who claimed the students had done nothing which would suggest sexual abuse.

Plaintiff also asserts that the Robertson County Sheriff's Office requested that the District Attorney seek an indictment even before she was interviewed by police. This request was allegedly at a point when the witnesses' statements, including those of the Principal and Assistant Principal at East Robertson Elementary, did not indicate that Plaintiff had any knowledge or suspicion about the alleged abuse.[2]

The Robertson County Sheriff's Office has sought indictments against school personnel in the past for other allegations about sexual abuse and the failure to report. It was unsuccessful in those efforts.

As a result of her arrest, Plaintiff filed suit in the Circuit Court for Robertson County,

---

[2] Defendant objects to many of Plaintiff's "facts," for several reasons, including that some are not set forth in separate numbered paragraphs with specific citations to the record as required by this Court's Local Rules. Defendant also objects on the grounds that Plaintiff does not know what occurred during the grand jury proceedings. With regard to Plaintiff's allegations regarding lack of knowledge and the timing of the request for an indictment, Defendant points out that, in response to its Statement of Facts, Plaintiff admits that "[i]n September 2012, [she] was informed by a school administrator at East Robertson Elementary School of an incident involving the possible sexual abuse of one student at East Robertson Elementary School by another student at East Robertson Elementary School." (Docket No. 23 at 1). Ultimately, the disputed facts are irrelevant to this Court's conclusion regarding summary judgment on Plaintiff's federal claims.

4

Tennessee on April 17, 2014. In her Complaint, she alleges that "[t]he Sheriff's Office, primarily through Detective Looney, pursued a reckless and malicious course of prosecution against employees of the school board" (including her), and that "[t]he reckless and malicious actions of the Robertson County Sheriff Office denied . . . her consitutional rights under the fourth and fourteenth amendments, for which [she] seeks relief under 42 U.S.C. § 1983, *et seq*." (Docket No. 1-1, Complaint ¶¶ 5 & 9). Plaintiff also alleges that the Sheriff Office' conduct "constituted false and wrongful arrest" under Tennessee law, and the pursuit of baseless charges amounted to malicious prosecution under state law. (Id. ¶ 10). Finally, Plaintiff alleges "[i]n the alternative" that the Sheriff's Office was negligent in investigating and pursuing the case and "is liable pursuant to the Tennessee Governmental Tort Liability Act, T.C.A. Section 20-29-101, *et seq*." (Id. ¶ 11). The case was removed to this Court on May 20, 2014.

## II. Standard of Review

The standards governing summary judgment motions are well known. A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox Ct.y Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. Application of Law

As indicated, Plaintiff brings both federal and state-law claims. The Court begins with the former.

The federal claims, alleging violations of the Fourth and Fourteenth Amendments, are brought pursuant to 42 U.S.C. § 1983, which, so far as relevant, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Generally, in order to state a claim under this statute, "a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." Harbin-Bey v. Rutter, 420 F.3d 571, 574 (6th Cir. 2005).

In this case, the sole Defendant is Robertson County. While "[a] body politic is a 'person' within the meaning of § 1983," that statute "does not permit a municipal entity to incur liability under a theory of *respondeat superior*." Miller v. Calhoun Cty., 408 F.3d 803, 813 (6th Cir. 2005) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). In other words, "local governments are responsible only for their own illegal acts" and "are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011) (internal citation and quotation marks omitted). Therefore, "[t]o properly allege a municipal liability claim, a plaintiff must adequately allege '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations.'" D'Ambrosio v. Marino, 747 F.3d 378,

386 (6th Cir. 2014) (quoting, Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir.2013)).

The Complaint filed in state court contains no such specific allegation. Nevertheless, Plaintiff argues that a municipal liability claim can be gleaned from that document. She points to the following paragraphs:

> 4. The actions of the Robertson County Sheriff's Office, and subsequent arrest of Dorris, followed extensive baseless allegations of administrative activities at East Robertson Elementary School in Robertson County. In these attempts to find a basis for arresting school personnel proved groundless, but apparently resulted in intense frustration to Detective Looney and others such that she was cooperating with and feeding information to the Plaintiffs in a Federal Court lawsuit against the school board, including sharing information obtained during investigations by the Sheriff's Office.
>
>     \*        \*        \*
>
> 7. . . . The basis for malice towards Dorris and others was that Detective Looney was frustrated by her previous attempts to have arrests made of school board personnel for similar allegations, and she was determined to obtain arrests when the opportunity arose under similar allegations. In addition, or in the alternative, there was such tremendous publicity regarding the Federal Court lawsuit filed against the school system that the Sheriff's Office wished to avoid any negative publicity or allegations of failure to pursue such actions that they recklessly and maliciously pursued Dorris and others, in spite of the fact that there was insufficient evidence to support an arrest in this matter. . .

(Complaint ¶¶ 4 & 7). Based on these allegations, Plaintiff submits that even though she "did not use the terms decision, custom, practice, or policy, clearly she did allege that the Sheriff's Office was pursuing a decision and practice of seeking indictments against the school board personnel on this issues [sic], regardless of the merits and support, and that as a result of the other Federal Court lawsuit and accompanying publicity, the Sheriff's Office wished to redirect the attention from their office to the school board by making these groundless arrests." (Docket No. 21 at 7).[3]

---

[3] The "other federal lawsuit" is styled Belcher v. Robertson County, 2:13-00161 and involved allegations of peer-on-peer sexual abuse at the Robertson County Elementary School. After a bench trial, Judge Campbell found in favor of Plaintiffs on their claims under 42 U.S.C. § 1983 and Title IX, 20 U.S.C.

Assuming for the sake of argument that Plaintiff has sufficiently pled a municipal liability claim, it still falls upon her to establish the existence of an underlying constitutional violation by one who acted pursuant to the custom, practice, or policy at issue. That is, "[t]here can be no Monell municipal liability under § 1983 unless there is an underlying unconstitutional act." Wilson v. Morgan, 477 F.3d 326, 340 (6th Cir. 2007); see City of Los Angeles v. Heller, 475 U.S. 796 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point"); Baynes v. Cleland, 799 F.3d 600, 622 (6th Cir. 2015) ("Without an underlying unconstitutional act, [plaintiff's] claim against the County under § 1983 must also fail"); Scott v. Clay Ct.y, 205 F.3d 867, 879 (6th Cir. 2000) ("our conclusion that no officer-defendant had deprived the plaintiff of any constitutional right *a fortiori* defeats the claim against the County as well").

"The Fourth Amendment, which is made applicable to the states by its incorporation into the Fourteenth Amendment, mandates that 'a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime." Radvansky v. City of Olmsted Falls, 395 F.3d 291, 302 (6th Cir. 2005) (quoting, Williams ex rel. Allen v. Cambridge Bd. of Educ., 370 F.3d 630, 636 (6th Cir. 2004)). Both of Plaintiff's federal claims have as an essential element the non-existence of probable cause.

"'A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff.'" Webb v. United States, 789 F.3d 647, 666 (6th Cir. 2015) (quoting, Voyticky v. Vill. of Timberlake, 412 F.3d 669, 677 (6th Cir. 2005). As such

---

§ 1681, *et seq.*

"[p]robable cause is a defense to false arrest." Id. (citing Walker v. Schaeffer, 854 F.2d 138, 142 (6th Cir. 1988)).

"Malicious prosecution constitutes a separate cognizable constitutional claim and is distinct from a claim for unlawful arrest." Legenzoff v. Steckel, 564 Fed. App'x 136, 146 (6th Cir. 2014). With regard to the elements of such a claim, the Sixth Circuit has held:

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute.' . . . Second, *because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution[.]* . . . Third, the plaintiff must show that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir. 2010) (emphasis added) (collecting cases, internal citations omitted).

In support of her claims, Plaintiff argues that, in determining probable cause, "the arresting officer cannot simply turn a blind eye to the facts developed in their [sic] investigation in making an arrest." (Docket No. 21 at 2). She then quotes the following language from the Sixth Circuit's decision in Logsdon v. Hains:

> "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." . . . The inquiry "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest," . . . where supported by "reasonably trustworthy information." . . . No overly burdensome duty to investigate applies to officers faced with the prospect of a warrantless arrest. In initially formulating probable cause, they need not "investigate independently every claim of innocence." . . . And after the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence. . . . However, the initial probable

9

cause determination must be founded on "both the inculpatory and exculpatory evidence" known to the arresting officer, . . . and the officer "cannot simply turn a blind eye to potential exculpatory evidence." . . . "In general, the existence of probable cause in a Section 1983 action presents a jury question, unless there is only one reasonable determination possible."

492 F.3d 334, 341 (6th Cir. 2007) (internal citations omitted).

Logsdon, however, was decided in the context of a warrantless arrest. Plaintiff acknowledges as much, but asserts that the same principles apply when an indictment is returned by a grand jury. The governing case law suggests otherwise.

"[I]t has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'" Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir. 2002) (quoting, Ex parte United States, 287 U.S. 241, 250 (1932)). The indictment's "preclusive effect" bars "constitutional claims" that require the showing of a lack of probable cause. Barnes v, Wright, 449 F.3d 709, 716 (6th Cir. 2006); see Bielefeld v. Haines, 192 Fed. App'x 516, 520 (6th Cir. 2006) ("The existence of probable cause for an arrest and prosecution defeats a Section 1983 claim under the Fourth Amendment").

"Higgason states the controlling federal standard in this Circuit." Bakos v. City of Olmsted Falls, 73 Fed. App'x 152, 157 (6th Cir. 2003). Still, "[t]here is an exception to this rule for indictments 'obtained wrongfully by defendant police officers who knowingly present false testimony to the grand jury.'" Constantine v. Gadeken, 563 Fed. App'x 464, 465 (6th Cir. 2014) (quoting Cook v. McPherson, 273 Fed. App'x 421, 424 (6th Cir. 2008).[4]

---

[4] Higgason speaks in terms of an indictment that is fair on it face and is issued by a properly constituted grand jury. Plaintiff presents no evidence or arguments that challenge the composition of the grand jury or call into question the facial validity of the indictment.

10

In response to the Motion for Summary Judgment, Plaintiff argues that Defendant "ignores the common sense argument that the indictment was obtained only through false or misleading testimony or evidence provided by the Defendant to the grand jury." (Docket No. 21 at 5). Common sense or not, Plaintiff offers no proof that misleading testimony or evidence was presented to the grand jury. In fact, she admitted in her deposition that she (1) was not present during the grand jury proceedings and heard no one testify (hardly a surprise since the "grand jury system depends upon the secrecy of grand jury proceedings," Rehberg v. Paulk, 132 S.Ct. 1497, 1509 (2012)); (2) has not read a transcript or heard a recording of the proceedings; and (3) has no knowledge of whether Detective Looney admitted or misrepresented any fact to the grand jury. All she presents are her own inferences, subjective beliefs and conclusions, but those are insufficient to invoke the exception to the presumption of probable cause implicit in a grand jury indictment. See, Constantine, 564 Fed. App'x at 465-66 ("without facts to establish more than a mere possibility that [the police officer] presented false testimony to the grand jury, the indictment conclusively established that [the officer] had probable cause against [plaintiff]"); Cook, 273 Fed. App'x at 424 ("suggesting that [officers] did not testify in good faith before the grand jury" without any evidence "other than [plaintiff's] eventual acquittal on the assault charge to support that assertion" is insufficient to invoke the exception); Shaleford v. Hensley, 2013 WL 5371996, at *7 n.2 (E.D. Ky. Sept. 24, 2013) ("even if it were unreasonable for [trooper] to believe he had probable cause at the time he testified before the grand jury, this is not the same as presenting false testimony").

Apart from the naked suggestion of perjury or misrepresentation, Plaintiff complains that her side of the story was not told to the grand jury. The Court has no way of knowing whether it was because, again, Plaintiff does not know what information the grand jury was given. Regardless, and

leaving aside that "an officer is not required to believe a suspect," Fowler v. Burns, 447 Fed. App'x 659, 662 (6th Cir. 2011), the government has no obligation to provide the grand jury with exculpatory evidence unless, perhaps, it conclusively establishes innocence. See, United States v. Angel, 355 F.3d 462, 475 (6th Cir. 2004) "The government . . . has no judicially enforceable duty to provide a grand jury with exculpatory evidence"); Carver v. Mack, 112 Fed. App'x 432, 437 (6th Cir. 2004) (dismissing false arrest case based partly on the grounds that a detective did not present exculpatory evidence to grand jury, and noting that, even assuming the assertion was true, the Supreme Court in United States v. Williams, 504 U.S. 36, 47 (1992) "announced there is no federal duty to present exculpatory evidence to a grand jury'); Lee v. Lucas, 2013 WL 5670930, at *10 (N.D. Ohio Oct. 15, 2013) (citation omitted) ("Where an indictment is fair on its face, a defendant is 'not entitled to challenge it on the ground that information he considered favorable to his defense was not presented to the grand jury'").

Plaintiff also suggests that Detective Looney's investigation was shoddy or incomplete. Even if it was, that alone is insufficient to establish the limited exception to the presumption that grand jury indictments are returned based upon a finding of probable cause. See, Bakos, 73 Fed. App'x at 158 (arguments about "deficience in the investigation" are insufficient to overcome the presumption set forth in Higgason); Smith v. Seneca Cty. Comm'rs, 2015 WL 1119729, at *5 (N.D. Ohio Mar. 11, 2015) ("While [officer] could have taken extra steps to ensure he had the correct individual, such thoroughness, while aspirational, is not required to be compliant with the Constitution"); Powers v. Wallen, 2014 WL 1491213, at *8 (E.D. Tenn. April 14, 2014) (arguments centering around the "caliber" of the investigation and information not discovered do "not show that [the officer] testified falsely or that the grand jury was tainted" so as to meet exception); LeFever

v. Ferguson, 956 F. Supp. 2d 819, 838 (S.D. Ohio 2013) (plaintiff's allegations regarding irregularities in the investigation is insufficient where "she cites no evidence of irregularities in the actual grand jury proceeding that would undermine the presumption of probable cause arising from an indictment').

Finally with regard to her federal claims, Plaintiff argues that the Robertson County Sheriff's Office (and Detective Looney in particular) harbored animus because their prior efforts to charge school personnel with failure to report crimes went nowhere. However, an arrest "is constitutionally problematic only in the absence of probable cause." Hoover v. Walsh, 682 F.3d 481, 499 (6th Cir. 2012). Therefore, in the absence of countervailing concerns like the intentional discriminatory application of the law based on race, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806 (1996). Moreover, Plaintiff's bare assertions in her affidavit that she is "aware that the Robertson County Sheriff's Office attempted to obtain indictments to [sic] school personnel at East Robertson Elementary School and Central Office personnel previously," and that it was "unsuccessful," (Docket No. 24, Dorris Aff. ¶6) is insufficient to establish a pattern, practice or policy, or that Detective Looney acted pursuant to any such policy, custom, or practice.

It may well be that Plaintiff was innocent of the charges leveled by the grand jury; perhaps she should not have even been indicted. Unfortunately for Plaintiff, however, "[t]he Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979). What it does require is that citizens not be arrested without probable cause. Because Plaintiff has failed to present proof to overcome the presumption that the indictment by the grand jury established probable cause, her federal claims fail.

That leaves for consideration Plaintiff's state law claims. "Generally, 'if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.'" Harper v. Auto Alliance Int'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004) (citation omitted). "Dismissal is not mandatory, however, because supplemental jurisdiction 'is a doctrine of discretion, not of plaintiff's right.'" Id. In exercising its "broad discretion" to decide whether to continue to exercise pendant jurisdiction over state-law claims, a court can consider such factors as "'the values of judicial economy, convenience, fairness and comity[.]'" Gamel v. City of Cincinnati, 625 F.3d 949, 952 (6th Cir. 2010) (citation omitted).

The Court's substantive involvement in this case has been limited to considering the record in relation to whether Plaintiff has established a triable issue on her federal claims alleging false arrest and malicious prosecution. "Although the parties have completed discovery, 'there is no suggestion that the same discovery will not be of benefit to the parties in relation to litigating the state law claim in state court.'" Howard v. Smith Cty., 2011 WL 4361486, at *10 (Sept. 19, 2011) (citation omitted). "As such, 'the concerns of judicial economy, convenience and fairness do not override the accepted principle that purely state law disputes should be decided in state court," id., and, the state law claims will be remanded the Robertson County Circuit Court.

## IV. **CONCLUSION**

On the basis of the foregoing, the Court will enter an Order which grants Defendant's Motion for Summary Judgment with respect to Plaintiff's federal claims, and which remands Plaintiffs' state law claims to the state court.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE